Nadolsky's affidavit and report are similarly conclusory. In the report, which the affidavit entirely relied on, Nadolsky simply reviewed the evidence of Black's physical impairment and then concluded that Black is significantly restricted from the class of truck driving jobs and from a broad range of jobs in various classes. Nadolsky, however, did not provide any evidence regarding the number of trucking jobs from which Black is disqualified or the number of other jobs from which Black is disqualified. *See id.* In particular, Nadolsky did not provide any evidence that Black would need to be accommodated by the provision of trucks with cruise control in a significant percentage of truck driving jobs.[13] Furthermore, the evidence of Black's physical impairment that Nadolsky relied on in assessing Black's job opportunities is, as we explained above, problematic. Johnson's affidavit is contradicted by other evidence in the record, and Johnson himself lifted the restrictions he had imposed on Black in 1997. Therefore, we conclude that Black did not present sufficient evidence to raise a genuine issue of material fact as to whether he is substantially limited in the major life activity of working.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for Roadway. Because we affirm the district court's grant of Roadway's motion for summary judgment, we also **AFFIRM** the district court's denial of Black's motion for summary judgment.

---

[13]We note that the EEOC interpretive guidance states that "[t]he terms 'number and types of jobs,' . . ., are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (*e.g.* 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment." 29 C.F.R. pt. 1630, App. § 1630.2(j). However, Nadolsky did not produce even this showing of evidence in regard to how many trucking jobs Black would qualify for without the guaranteed provision of cruise control.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0246P (6th Cir.)
File Name: 02a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DOUGLAS BLACK,
    *Plaintiff-Appellant,*

        v.                                          No. 00-6439

ROADWAY EXPRESS, INC.,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 98-00657—James H. Jarvis, District Judge.

Argued: March 7, 2002

Decided and Filed: July 22, 2002

Before: MOORE, COLE, and FARRIS, Circuit Judges.[*]

---

### COUNSEL

**ARGUED:** Peter Alliman, WHITE, CARSON & ALLIMAN, Madisonville, Tennessee, for Appellant. Richard S. Busch, KING & BALLOW, Nashville, Tennessee, for Appellee. **ON BRIEF:** Peter Alliman, WHITE, CARSON

---

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

& ALLIMAN, Madisonville, Tennessee, for Appellant. Richard S. Busch, KING & BALLOW, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Douglas Black ("Black") appeals the district court's grant of summary judgment for Defendant-Appellee Roadway Express, Inc. ("Roadway"). Black, a truck driver, filed a complaint against his employer, Roadway, in October of 1998, alleging discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Black claimed that he was disabled for the purposes of the Act because of a knee injury and that Roadway discriminated against him on the basis of his disability by refusing reasonably to accommodate him. Roadway moved for summary judgment, claiming that Black was not disabled because his knee injury did not substantially limit any of his major life activities. The district court granted Roadway's motion for summary judgment. Because we conclude that Black did not raise a genuine issue of material fact as to whether his knee injury substantially limited him in any major life activities, we **AFFIRM** the district court's grant of Roadway's motion for summary judgment.

## I. BACKGROUND

Black began working for Roadway as an over-the-road truck driver in September 1991. On September 22, 1995, Black injured his right knee falling out of a truck. Between 1995 and 1997, Black had three surgeries performed on the knee. Following each surgery, Black took some leave from work, but he was eventually released to return to work with

---

were "how many truck driving jobs require the ability to operate a truck with a clutch or how often the painful configuration of the Peterbilt seat occurs . . . ." *Best*, 107 F.3d at 548.

Although we disagree with the district court's reasoning, we nonetheless agree with the district court's conclusion that no reasonable jury could find Black substantially limited in the major life activity of working. As evidence of his substantial limitation in the major life activity of working, Black submitted the affidavit and report of Dr. Julian Nadolsky ("Nadolsky"), Ed.D., a vocational expert ("VE"). Nadolsky attested that "it is my opinion that in the geographical area to which Mr. Black has reasonable access, he is disqualified because of his impairment from both a class of jobs and a broad range of jobs in various classes." J.A. at 436 (Nadolsky Aff.). In his report, Nadolsky concluded that:

> In summary, without a cruise control accommodation, Mr. Black will be totally disabled for employment in his regular job as a Tractor Trailer Truck Driver and in other semi-skilled driving occupations. And, because of the additional restrictions or limitations placed on him by Dr. Johnson, Mr. Black will be disqualified for employment in approximately 75% percent of the types of jobs for which he does not have skills, but could have performed prior to sustaining a work-related injury of his right knee . . . . Mr. Black, therefore, has a physical disability that substantially limits his ability to engage in the major life activity of working.

J.A. at 488 (Nadolsky Report). Nadolsky based both his affidavit and his report almost entirely on Johnson's affidavit and the restrictions Johnson placed on Black in 1997.

In *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598-99 (6th Cir. 1999), we concluded that a VE's testimony that the plaintiff's "physical impairments precluded her from engaging in most of [sic] jobs in the local and national economy as a registered nurse" did not create a genuine issue of material fact because it was "merely conclusory."

*Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 255-56 (6th Cir. 2000).

Finally, although the statistics regarding the number of trucks that come equipped with cruise control are relevant to the assessment of Black's significant restriction in performing a class of jobs,[12] they are only relevant to the extent that they show how many trucking jobs would require Black to drive a truck without cruise control. That most trucks are equipped with cruise control does not help Black if most trucking companies, like Roadway, require their drivers to accept whichever truck is assigned to them and maintain a truck fleet in which any percentage of the trucks does not have cruise control. In *Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir. 1997), the Seventh Circuit reversed a district court's grant of summary judgment for a trucking company in a case in which a truck driver alleged that he was disabled from the class of truck driving jobs because he could not operate trucks with a certain clutch configuration. The court in that case explained that relevant questions in regard to the truck driver's claim

---

[12]The Seventh Circuit has held that truck driving constitutes a class of jobs. *Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir. 1997); *see also DePaoli v. Abbott Labs.*, 140 F.3d 668, 673 (7th Cir. 1998) (recognizing that truck driving constitutes a class of jobs); *Baulos v. Roadway Express, Inc.*, 139 F.3d 1147, 1152-53 (7th Cir. 1998) (same). In *DePaoli*, the court explained its method for defining a class of jobs for the purposes of the ADA as follows:

> Thus, in order to define a meaningful class of jobs, we must look to the training, knowledge, skills, and ability required to perform the particular work, as well as the geographic area reasonably available to the plaintiff. Common job groupings within a particular industry would also be relevant, just as they are in the somewhat analogous area of defining relevant markets in antitrust cases. If a disability substantially limits a person from holding a job for which she has a specialized license, and the person would need to undergo significant new training to become qualified for positions of comparable responsibility elsewhere, that fact too would help draw the line between the class of jobs relevant to the ADA and those that are too remote from the position at issue.

*DePaoli*, 140 F.3d at 673.

---

the restriction that he only drive trucks with cruise control.[1] Black claims that he informed Roadway of the restriction and that Roadway refused to accommodate him by providing him with trucks with cruise control.[2] Prior to Black's release to return to work in August of 1997, after his third surgery, Black was also examined by an orthopedic surgeon at Roadway's request. Roadway's surgeon concluded that although Black was impaired, he could work without restriction. Thereafter, Roadway took the position that Black was not disabled and thus did not need accommodation. Black has since not returned to work at Roadway, but between August 1997 and December 1997, he did work for two other trucking companies, both of which provided him with trucks with cruise control.

On January 7, 1998, Black filed a charge of discrimination with the Tennessee Human Rights Commission, as the local agency of the Equal Employment Opportunity Commission ("EEOC"), alleging that Roadway discriminated against him based on his disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.* After receiving notice of the right to sue from the EEOC, Black filed a complaint against Roadway in the United States District Court for the Eastern District of

---

[1]The record is unclear as to the restrictions placed on Black after each surgery; it appears that Black was initially released to return to work after each surgery without restriction, but upon his complaints of pain, various doctors restricted him to only driving trucks with cruise control. In addition, immediately after his third surgery, Black's orthopedic surgeon, William L. Johnson, imposed restrictions on Black involving climbing and lifting. Joint Appendix ("J.A.") at 328 (Johnson Release). However, according to Black, Johnson eventually lifted all of these restrictions, except for the restriction involving cruise control. J.A. at 238 (Black Dep.).

[2]Black alleges that Roadway on one instance assigned Black to a truck with cruise control that did not work. For the purposes of this opinion, when we refer to cruise control we mean cruise control that works.

Tennessee on October 23, 1998.[3]  In his complaint, Black alleged that his knee injury constituted a "disability" under the ADA and that Roadway's refusal to provide him with trucks with cruise control constituted the denial of a reasonable accommodation of his disability.  Roadway moved for summary judgment on May 8, 2000, arguing that Black was not disabled for the purposes of the ADA because his knee injury did not cause him to be substantially limited in any major life activity; on June 23, 2000, Black also moved for summary judgment.  On September 25, 2000, the district court issued an order granting Roadway's motion for summary judgment and denying Black's motion for summary judgment.  In its accompanying opinion, the court stated that Black's knee injury constituted a "physical impairment" for the purposes of the ADA.  However, the court concluded that Black's knee injury did not substantially limit him in any major life activity, as is required for an impairment to constitute a "disability" for the purposes of the ADA.  Black timely appeals.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's order granting summary judgment.  *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1074 (2002).  We also review de novo a district court's order denying summary judgment, if the denial is based on purely legal grounds.  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994).  If the denial is based on the district court's finding of a genuine

---

[3]After filing the charge of discrimination with the EEOC, Black also filed a claim against Roadway's insurance carrier, Liberty Mutual Insurance Company, in Tennessee state court pursuant to the Tennessee worker's compensation statute.  The case was appealed to the Tennessee Supreme Court, which awarded Black benefits for a sixty-percent disability in his leg.  *Black v. Liberty Mut. Ins. Co.*, 4 S.W.3d 182 (Tenn. 1999).

of jobs or from a broad range of jobs in various classes.  In order to demonstrate substantial limitation in the major life activity of working, Black needed only to demonstrate that he is "significantly restricted in the ability to perform *either* a class of jobs *or* a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i) (emphases added); *see also McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 372-73 (6th Cir. 1997).[11]  We have recently held that a plaintiff was significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes where his injury precluded him from performing at least fifty percent of the jobs previously available to him.

---

[11]The EEOC regulations define "class of jobs" as "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B). The EEOC interpretive guidance gives as an example of "class of jobs":

> [A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, *e.g.*, the class of semi-skilled jobs.

29 C.F.R. Pt. 1630, App. § 1630.2(j).  In *Sutton*, the Supreme Court also noted that the "class of jobs" from which a plaintiff is substantially limited must be "broad."  *Sutton*, 527 U.S. at 491.

The EEOC regulations define "broad range of jobs in various classes" as "the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(C).  The EEOC interpretive guidance gives as an example of "broad range of jobs in various classes":

> [A]n individual has an allergy to a substance found in most high rise office buildings, but seldom found elsewhere, that makes breathing extremely difficult.  Since this individual would be substantially limited in the ability to perform the broad range of jobs in various classes that are conducted in high rise office buildings within the geographical area to which he or she has reasonable access, he or she would be substantially limited in working.

29 C.F.R. Pt. 1630, App. § 1630.2(j).

First, the district court assessed the jobs available to Black by taking into account the accommodation of Black's impairment by other trucking companies.[9] However, the failure reasonably to accommodate an individual's impairment may be unlawful discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A). To permit a company to avoid liability under the ADA simply by showing that an individual with an impairment is able to perform jobs because most companies choose to comply with the ADA would significantly undermine the effectiveness of the ADA. As we understand the ADA, workplace accommodation of an individual's impairment cannot be taken into account in assessing whether that individual is substantially limited in the major life activity of working. *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 786 (3rd Cir. 1998).[10] Therefore, the district court in this case should have assessed whether Black was disabled in the major life activity of working without taking into account the accommodation of Black by the provision of trucks with cruise control by some trucking companies.

Second, the district court did not separately address whether Black's knee injury significantly restricted him from a class

---

[9] The interpretive guidance to the EEOC regulations states that: "In general, an accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities." 29 C.F.R. pt. 1630, App. § 1630.2(o). According to Black, he requested that he be provided only with trucks that had cruise control at the two trucking companies he worked for during the pendency of his lawsuit. Therefore, because we view the facts in light most favorable to Black, we view the provision by the other trucking companies to Black of trucks with cruise control as an accommodation of Black's impairment.

[10] In *Sutton*, the Supreme Court held that for the purposes of the ADA, disability "is to be determined *with* reference to corrective measures." *Sutton*, 527 U.S. at 488 (emphasis added). However, in *Sutton*, the Court was addressing measures that, when taken by the individual with the impairment, corrected or mitigated the impairment. This rationale does not apply in this case because Black could not provide himself with trucks with cruise control.

issue of material fact, however, we review for abuse of discretion a district court's order denying summary judgment. *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988). In this case, the district court denied Black's motion for summary judgment on the purely legal ground that it was granting Roadway's motion for summary judgment. Therefore, we review de novo both the district court's grant of Roadway's motion for summary judgment and the court's denial of Black's motion for summary judgment.

Under Federal Rule of Civil Procedure 56(c), we affirm a grant of summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision to grant summary judgment, this court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Disability under the ADA

The ADA prohibits covered employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered

entity." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The ADA defines "disability" in pertinent part as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . ." 42 U.S.C. § 12102(2)(A). Regulations promulgated by the EEOC define "physical impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting [certain] body systems." 29 C.F.R. § 1630.2(h)(1) (2001).[4] "Major life activities," according to the regulations, "mean[] functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).[5] For major life activities other than working, the regulations define "substantially limits" as: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual

---

[4] The Supreme Court explained in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479 (1999), that "[n]o agency . . . has been given authority to issue regulations implementing the generally applicable provisions of the ADA . . . . Most notably, no agency has been delegated authority to interpret the term 'disability.'" The *Sutton* Court, however, stated that "[b]ecause both parties accept these regulations as valid, and determining their validity is not necessary to decide this case, we have no occasion to consider what deference they are due, if any." *Sutton*, 527 U.S. at 480; *see also Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 122 S. Ct. 681, 689 (2002). Similarly, in this case, both Black and Roadway accept the regulations as valid and determining their validity is not necessary to decide the case; therefore, we assume the validity of the regulations for the purpose of deciding this case. *See Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 724 n.1 (6th Cir. 2000).

[5] The interpretive guidance to the regulations notes that: "[t]his list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching." 29 C.F.R. pt. 1630, App. § 1630.2(i) (2001).

---

A.  Clean my house, do the chores around the house and just that's basically it. Try to get a little exercise.
Q.  What do you do for exercise?
A.  Just like walk or things of that nature, maybe shoot a basketball or something.

J.A. at 35-36 (Black Dep.). Black also testified that he often rides his motorcycle around town and that if he was provided with a truck with cruise control, he could do his job as an over-the-road truck driver — a job that involves sitting, kneeling, stooping, and lifting. *See, e.g.*, J.A. at 301 (Black Dep.) ("I can drop a hook and I can dolly the trailers up and I can drive, but I have to have cruise control or I can't stand the pain."). Moreover, Johnson attested that Black was significantly restricted in the condition, manner, or duration in which he could engage in certain activities, but Johnson himself released Black to return to work after Black's third surgery without restriction. Therefore, viewing the facts in the light most favorable to Black, we conclude that no reasonable jury could find that Black is disabled in any major life activity other than working.

In regard to the major life activity of working, the district court stated that "[t]he record easily supports a finding that this plaintiff is not precluded from performing a class or broad range of jobs available in East Tennessee . . . ." J.A. at 562 (Op.). The court explained that "this case is unique because plaintiff admits that he is able to perform all of the essential functions of his previous job as an over-the-road truck driver, having done so for two different employers after his employment with Roadway. . . . Plaintiff, of course, is able to do so because the trucks for those employers are equipped with cruise control." J.A. at 562. In the view of the district court, the fact that statistical evidence demonstrated that a high percentage of Roadway's trucks and a high percentage of trucks in general included cruise control as standard equipment proved that Black is not substantially limited from working for truck companies or even from working for Roadway. We believe that the district court erred in this portion of its analysis.

J.A. at 94 (attached page 3) (Black Aff.).  Johnson attested that "[a]s compared to the average person in the general population, I feel Mr. Black has significant restrictions as to the condition, manner or duration under which he can perform activities such as walking, kneeling, stooping, jogging, walking on rough terrain, lifting, sitting in a position where he cannot moderately flex and extend his right leg, running or climbing ladders.  Mr. Black is not precluded at this time from engaging in these activities on a limited basis as his condition will tolerate, but he should not engage in these activities on a prolonged or repetitive basis."  J.A. at 310 (Johnson Aff.).

This evidence does not demonstrate that Black is substantially limited in any major life activity other than working.  We have held in regard to the major life activity of walking that a plaintiff had to adduce "sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population." *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (quotation omitted).  "[M]oderate difficulty or pain experienced while walking does not rise to the level of a disability." *Id*.  The Supreme Court has also recently noted that "[t]he word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of [the major life activity] from qualifying as disabilities." *Toyota Motor Mfg.*, 122 S. Ct. at 691.  On the basis of Black's and Johnson's affidavits alone, then, it does not appear that Black is *substantially* limited from any major life activity.

In addition, Black's and Johnson's affidavits are contradicted by other evidence in the record.  In a deposition taken for the purpose of his state worker's compensation action, Black testified as follows:

Q.   You currently aren't working.  Take me through an average day, you get out of bed and what do you do?

can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).[6]  For the major life activity of working, the regulations define "substantially limits" as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).[7]

_____

[6]In determining whether an individual is substantially limited in a major life activity, the regulations state that courts should consider: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).  In addition, the Supreme Court has stated that "[t]he definition of disability also requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.'  Thus, whether a person has a disability under the ADA is an individualized inquiry." *Sutton*, 527 U.S. at 483 (citing 42 U.S.C. § 12102(2)); *see also* 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual"); *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 253 (6th Cir. 2000).

[7]In addition to the usual factors courts should consider in determining whether an individual is substantially limited in a major life activity, *see infra* note 6, the regulations state that courts should also consider the following factors in determining whether an individual is substantially limited in the major life activity of working:

   (A)   The geographical area to which the individual has reasonable access;
   (B)   The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the

In this case, Roadway admits that it refused to provide Black with trucks that have cruise control, even though it knew of his knee injury. Therefore, Black has direct evidence that Roadway discriminated against him in violation of the ADA by not reasonably accommodating an alleged physical disability. This court has held that if an employee has direct evidence of discrimination in violation of the ADA, the employee then bears the burden of proving (1) that he or she is "disabled," and (2) "that he or she is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). The employer bears the burden of proving "that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship on the employer." *Id.*

## C.  Whether Black is Disabled under the ADA

The district court granted Roadway's motion for summary judgment because it concluded that no reasonable jury could find that Black is disabled under the ADA. We agree with the district court's conclusion, but we disagree in part with its reasoning. The district court found that although Black's knee injury constitutes a physical impairment, no reasonable jury could find that the knee injury substantially limits Black in any major life activities. Black claims that he is substantially limited in "one or more major life activities

---

impairment (class of jobs); and/or

(C)   The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

---

including walking, kneeling, stooping, jogging, lifting, sitting in confined, restricted positions, running, climbing and working." Appellant's Br. at 15. In regard to major life activities other than working, the district court found that "most of these alleged limitations relate to activities which are not major life activities," and, moreover, the court concluded that Black's "alleged inability to perform certain tasks or functions on a repeated or prolonged basis is not enough, as a matter of law, for him to meet the threshold requirement of proving that he is 'disabled.'" Joint Appendix ("J.A.") at 562 n.7, 565.[8] With this portion of the district court's analysis, we completely agree.

As evidence of his substantial limitation in major life activities other than working, Black submitted his affidavit and the affidavit of Dr. William Johnson ("Johnson"), his orthopedic surgeon. According to Black's affidavit, his physical impairment limits him in the following ways:

> I cannot kneel or stoop because my knee and leg simply will not support me performing this type of action. I cannot sit for any extended period of time with my right leg in one place or in a position where its movement is restricted. . . . I am able to walk short distances, but I have a constant limp. . . . If I attempt to walk two miles or more, my knee simply becomes dysfunctional at that point. I am not able to stand for long periods, . . . I am not able to exercise a full range of motion with my leg. I am unable to run or jog at all.

---

[8] As the interpretive guidance to the EEOC regulations states that a finding of substantial limitation to major life activities other than working precludes a determination of whether an individual is substantially limited in the major life activity of working, we address whether Black's impairment substantially limits him in any major life activity other than working before we address whether Black's impairment substantially limits him in the major life activity of working. 29 C.F.R. pt. 1630, App. § 1630.2(j); *see also Sutton*, 527 U.S. at 492; *Hoskins*, 227 F.3d at 725 n.2.