**Frederick Alan WHITSON,**
**Plaintiff–Appellant,**

v.

**UNION BOILER COMPANY,**
**Defendant–Appellee,**

No. 01–5294.

United States Court of Appeals,
Sixth Circuit.

Oct. 2, 2002.

Before BOGGS and COLE, Circuit Judges; and BELL, District Judge.*

PER CURIAM.

Plaintiff–Appellant Frederick Alan Whitson ("Whitson"), appearing *pro se,* appeals the district court's entry of summary judgment in favor of Union Boiler Company on Whitson's claim under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 2111–17. Whitson claimed that he was disabled because of a seizure disorder and a vision impairment, and that Union Boiler discriminated against him on the basis of his disability by terminating his employment when he refused a work assignment. Union Boiler moved for summary judgment, claiming that Whitson was not disabled because his seizure disorder and vision impairment did not substantial-ly limit any of his major life activities. The district court granted Union Boiler's motion for summary judgment because it concluded that no reasonable jury could find that Whitson is disabled under the ADA. We agree.

## I.

On April 4, 1994, Whitson was hired by Union Boiler Company as a pipefitter rigger to install piping in and around tanks measuring 66 feet in diameter and 140 feet in height. During the first two days of his employment Whitson was assigned to work on the ground rigging pipe to a cable. On the third day, April 6, he was assigned to work inside the tank at elevation. Whitson declined the work assignment because it was unsafe. Whitson testified that the job required walking on two-foot-wide boards fourteen stories in the air without life lines and without a safety net. He advised his foreman that he had a seizure disorder and would not feel comfortable on that assignment. Whitson was reassigned to a job on the ground as a rigger and tool runner. On Friday, April 8, Whitson was again assigned to work inside the tank at elevation. Whitson reiterated his safety concerns on account of his seizure disorder and requested a transfer to a different job. Whitson was advised that he could work inside the tank, quit, or be fired. Whitson was fired for refusing a job assignment.

Whitson filed a claim with the Equal Employment Opportunity Commission, and after receiving his "right to sue" letter, timely filed this action.

## II.

### A. Standard of Review

This Court reviews de novo a district court's grant of summary judgment. *Hol-*

---

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

*loway v. Brush,* 220 F.3d 767, 772 (6th Cir.2000) (*en banc*). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

Because Whitson is proceeding *pro se,* his pleadings are liberally construed and are held to less stringent standards than those prepared by attorneys. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Williams v. Browman,* 981 F.2d 901, 903 (6th Cir.1992). Nevertheless, those who proceed without counsel must still comply with the procedural rules that govern civil cases. *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). *See also Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989) ("Neither this Court nor other courts, however, have been willing to abrogate basic pleading essentials in pro se suits.").

## B. Disability under the ADA

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of that individual's disability. 42 U.S.C. § 12112. To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that:

(1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open.

*Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 449 (6th Cir.1999).

Whitson's ability to show that he is "disabled" within the meaning of the ADA is a "threshold requirement" for recovery under the ADA. *Burns v. Coca–Cola Enterprises, Inc.,* 222 F.3d 247, 253 (6th Cir. 2000). Whether a person has a disability under the ADA is "an individualized inquiry." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). An individual is "disabled" under the ADA only if he has, has a record of, or is regarded as having, a physical or mental impairment that "substantially limits" one or more of his "major life activities." 42 U.S.C. § 12102(2). *See also Burns,* 222 F.3d at 252. For purposes of the ADA, "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

The term substantially limits means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

With respect to the major life activity of working, "substantially limits" means sig-

nificantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

C. Evidence of Whitson's disability

Whitson produced evidence that he was hospitalized in 1985 for a seizure disorder and that he has experienced 12 seizures since then. He testified that because he does not know when he might suffer from a seizure, he avoids activities such as water skiing and certain carnival rides. It is undisputed that Whitson drives a car and a motorcycle. Although Whitson testified that the side effects of taking seizure medication, specifically Dilantin, substantially limit the major life activities of working, driving a car, thinking, walking, and seeing, the evidence is unrebutted that Whitson has not been on medication for his seizure disorder since his last seizure in 1990.

■ Focusing first on major life activities besides work, the evidence is not sufficient to enable a reasonable jury to find that Whitson's seizure disorder significantly restricts his ability to perform any particular major life activity. Evidence that his medication substantially affected his major life activities in 1990 is not relevant to the issue of whether he was disabled in April 1994.

With respect to the major life activity of work, Whitson testified that he has been working as a pipefitter for thirty years, and that he continued to work as a pipefitter even after his first seizure. Prior to his experience at Union Boiler, he never told his employers about his seizure disorder, and he worked without any change in his work activities or work restrictions. Since being terminated from Union Boiler he has returned to work as a pipefitter. His work has always included working at elevation, on scaffolds, and with a safety belt tied into a life line.

Whitson testified that the only reason he was unable to perform the assigned job at Union Boiler was because there was no place for him to tie his safety belt into a life line, and with his seizure disorder the risk of having a seizure and falling was too great. Although Union Boiler contests the lack of a life line, on summary judgment the Court must view the evidence and draw all reasonable inferences in favor of Whitson, the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. Accordingly, for purposes of this appeal the Court assumes there was no life line and that the lack of a life line made the job at elevation particularly dangerous for an individual with a seizure disorder.

Nevertheless, evidence that Whitson was unable to do a single, particular job is not sufficient evidence of a disability for purposes of the ADA. Whitson did not produce evidence that he was significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *See* 29 C.F.R. § 1630.2(j). Because his seizure disorder has not affected his ability to find work as a pipefitter before or after his termination from Union Boiler, he has failed to create an issue of fact as to whether his seizure disorder constituted a substantial limitation in the major life activity of working.

It is true that an employer cannot avoid liability under the ADA simply by showing that the employee is able to perform other jobs because other companies choose to comply with the ADA and accommodate his disability. This Court has previously

noted that "workplace accommodation of an individual's impairment cannot be taken into account in assessing whether that individual is substantially limited in the major life activity of working." *Black v. Roadway Express, Inc.*, 297 F.3d 445, 452 (6th Cir.2002). Whitson has not shown, however, that other employers "accommodated" his seizure disorder by supplying a life line. Whitson admitted that he never told previous employers about his seizure disorder. ◦The provision of a safety tie-off or life line to those who work at elevation is not an accommodation given to those with seizure disorders, but rather a safety requirement applicable to all employees under occupational safety codes. *See, e.g.*, Union Boiler Company Safety Codes for Field Erection and Construction, at 18. Whitson's ability to find other pipefitting jobs where there were safety tie-offs is not an indication that other employers were willing to accommodate his disability.

Whitson has also suggested that he meets the disability requirements under the ADA because Union Boiler "regarded" him as having a disability. In support of this argument Whitson notes that he told Union Boiler about his seizure disorder and that Union Boiler accommodated his disability for two days by allowing him to work on the ground.

The definition of "disability" under the ADA includes being "regarded" as having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." § 12102(2)(A) & (C). The intent behind this provision is to reach those cases in which "myths, fears and stereotypes" affect the employer's treatment of an individual. *Plant v. Morton Intern., Inc.*, 212 F.3d 929, 938 (6th Cir.2000). An individual may be "regarded" as having a disability if the employer "mistakenly believes that a person has a physical impairment that sub-stantially limits one or more major life activities," or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

■ Whitson has not made either showing. He has not shown that the employer erroneously believed he had a substantially limiting impairment or that his impairment was more substantially limiting than it was. He has shown only that his employer found him alternative work when he told his employer that he had a disability that prevented him from performing his assigned work. As we have previously noted, an employee cannot show that the "regarded as" provision applies to him merely by pointing to evidence that the employer knew of his medical restrictions and modified his responsibilities based on them. *Plant*, 212 F.3d at 938. Whitson has not shown that the employer erroneously believed that his impairment was more limiting than it actually was. Accordingly, Whitson has not met his burden under the "regarded as" portion of the definition of disability under the ADA.

We conclude that the district court correctly determined that the evidence was not sufficient to create an issue of fact for a jury as to whether Whitson was disabled or was regarded as having a disability as a result of his seizure disorder.

■ In addition to his seizure disorder, Whitson argues that his vision impairment also substantially limited his ability to work, see and drive a car. The evidence does not support this argument. The evi-

dence reflects that Whitson suffered an injury to his left eye when he was twelve years old and that his vision is 20/300 in his left eye and 20/30 in his right eye. The evidence reflects that Whitson wears non-prescription reading glasses only for reading, that he drives a car and a motorcycle, and that he has been working for 30 years as a pipefitter and continues to work as a pipefitter. There is no evidence that his vision impairment prevents him from performing normal daily activities or work. *See Still v. Freeport–McMoran, Inc.,* 120 F.3d 50 (5th Cir.1997) (dismissing ADA claim of discharged worker because although worker was blind in one eye, his sight was not substantially limited as evidenced by his ability to perform normal daily activities such as driving). Because Whitson has not shown that his vision substantially limits one or more of the major life activities, he has not shown that his vision impairment constitutes a disability under the ADA.

### III.

Upon de novo review we conclude that Whitson did not raise a genuine issue of material fact as to whether his seizure disorder and/or his vision impairment substantially limited him in any major life activities. Accordingly, we AFFIRM the district court's grant of Union Boiler's motion for summary judgment.